# WILLIAM McDONOUGH, RESPONDENT, *v.* THE MAYOR AND ALDERMEN OF VIRGINIA CITY, APPELLANTS.

VIRGINIA CITY CHARTER — OPENING AND REPAIRING STREETS. The provision of the charter of Virginia City, that the "board of aldermen shall have power" to open streets, improve them, and keep sidewalks in repair, gives a permissive power only, and does not impose the duty upon the city to do these things.

CARE REQUIRED OF MUNICIPAL CORPORATIONS IN MAKING IMPROVEMENTS. Though it is not incumbent upon the City of Virginia, under its charter, to open streets or keep the sidewalks in repair, yet if it undertake to do so, the act must be done with the same degree of care for the rights and personal safety of individuals, which natural persons are required to exercise under similar circumstances.

VIRGINIA CITY NOT OBLIGED TO REPAIR STREETS. The charter of Virginia City in express terms leaves the matter of repairing the streets discretionary with the authorities, as it does the opening of them in the first instance ; and consequently the city cannot be held liable for a refusal to repair a street after it has once been properly opened and put in good condition.

VIRGINIA CITY, WHEN RESPONSIBLE FOR DEFECTS IN STREETS. Though Virginia City, under its charter, is not obliged to open a street, nor to repair one after it is opened, yet if a street, when opened, is left in such a defective condition that injuries result therefrom to persons exercising proper care, the city is liable therefor.

APPEAL from the District Court of the First Judicial District, Storey County.

It appears that on the night of December 15th, 1868, C street in Virginia City, at the intersection of Flowery street, was so much out of order that there was nothing to protect a person unfamiliar with the streets, in a dark night, from falling a distance of three feet; and that plaintiff, who had recently become a resident of the city, in passing along the street on that night, which was dark, fell that distance and broke his right leg at the ankle. Having instituted this suit in the Court below, he recovered a verdict for two thousand dollars. A motion for new trial by defendants having been denied, they appealed.

*J. W. Whitcher*, for Appellants.

The municipal corporation is not liable under the charter for damages sustained by any one by reason of imperfectly constructed sidewalks. So held in 32 Barbour, 634, and 36 Barbour, 226, the New York statute referred to in them being substantially identical with ours.

*R. H. Taylor*, for Respondent.

I. Virginia City has power to lay out and repair public streets, and to provide for the construction, repair and preservation of sidewalks, (Statutes of 1866, 90, Sec. 17) and this amounts to an obligation to keep the streets in repair. (*Mayor, &c., of New York* v. *Furze*, 3 Hill, 612; *Hutson* v. *Mayor, &c.*, 5 Seld. 163.)

II. When streets are negligently suffered to become and remain out of repair, the corporation is liable, if the party injured exercises ordinary care. (*Griffin* v. *Mayor, &c., of New York*, 5 Seld. 461; *Mayor &c. of New York* v. *Bailey*, 2 Denio, 434.)

III. Whether negligence existed in a particular case is a fact for the jury. The jury in this action having found upon that issue, the Court should not interfere with the verdict. (*Richmond* v. *Sacramento Valley R. R.*, 18 Cal. 358; *Beers* v. *Housatonic R. R. Co.*, 19 Conn. 566; *Munroe* v. *Leach*, 7 Met. 274.)

By the Court, Lewis, C. J. :

This action is instituted by the plaintiff to recover damages for personal injuries alleged to have been sustained by him, occasioned by a fall or pitch at the intersection of two of the public streets of the City of Virginia. The complaint assumes that it is the duty of the defendant to keep its streets in repair and good condition, and charges that the injuries suffered by the plaintiff were caused by its neglect to perform this duty.

The defendant interposed a general demurrer, which being overruled, it subsequently answered. The trial resulted in favor of the plaintiff. Upon this appeal, it is again argued that the complaint does not state a cause of action : because it is said the charter of the city, or rather law incorporating it, does not absolutely impose the duty upon the authorities, either to open the streets, or to keep them in repair when opened. That portion of the law touching this question, declares that the " board of aldermen shall have power    *    *    to lay out, extend and alter the streets and alleys, provide for the grading, draining, cleaning, widening, lighting or otherwise improving the same ; also, to provide for the construction, repair and preservation of sidewalks, bridges, drains and sewers, and for the prevention and removal of obstacles from the streets and sidewalks."

The language conferring this power, it will be observed, is simply permissive. It does not impose the duty upon the city to do these things. To open streets, improve them, and to keep the sidewalks in repair, are matters discretionary—left entirely to the option of the city. " The board of aldermen shall have power," cannot be construed to be an imposition of an absolute duty which is to be performed *nolens volens* by the city corporate authorities. Here the *power* to do the acts is unquestionably conferred ; but to confer a power is one thing, to order it to be exercised is an entirely different thing. There is nothing in the language quoted, nor in the context of the Act, imposing the exercise of this power upon the board of aldermen as a duty. The law, as we interpret it, leaves it optional or discretionary with the corporate authorities whether they will exercise these powers or not. Such is the interpretation

placed upon similar laws, or charters, in other States.   ( *Wilson* v.
*The Mayor &c. of New York*, 1 Denio, 595 ;  *Mills* v. *City of
Brooklyn*, 32 N. Y. 489.)

But although it is thus left optional with the city to open streets
and to keep the sidewalks in repair, still if it undertake to do it, the
act must be done with that degree of care for the rights and per-
sonal safety of individuals ·which natural persons are required to
exercise under similar circumstances.   It may not, for example,
be incumbent on an individual to build a sidewalk ; but it will not
be doubted if he should attempt it and perform the work in a man-
ner dangerous to persons using it, and injury should be the result
therefrom, that he would be liable in damages.   So with a mu-
nicipal corporation : even when it is not incumbent on it to do work,
still if it undertake its performance, it must not do it in a manner
careless of the personal safety of the citizen.

The law upon this head is thus well and clearly stated in the case
of *Lacour* v. *The Mayor &c. of New York City*, 3 Duer, 406 :
" The point involved in the present case was expressly decided in
the case of the Rochester White Lead Company above cited, in
which the distinction between judicial or discretionary duties and
those purely ministerial was clearly taken.   Up to the point at
which a duty ceases to be one of the former description, a public
officer is not amenable to an individual in a civil action for the ex-
ercise, or the refusal or neglect to exercise the duty ; but the mo-
ment the duty ceases to be of this character, which it does
when the election to perform is made, this immunity also ceases."
The execution of the work itself is purely ministerial, and thence-
forth the public officer becomes subject to the same rules which gov-
ern the liabilities of private individuals, and like them is liable in
damages for the improper or negligent exercise of the duty.   Thus,
the ordinance of a city or municipal corporation directing a public
improvement to be made is the exercise of a purely judicial or dis-
cretionary function, and for such exercise the corporation is not
liable in a civil action ; but the prosecution of the work itself—the
carrying of the improvements into execution—is ministerial in its
character, and the corporation is bound to see that it is done in a
proper manner, or like an individual, it will be responsible in
damages."

The case of the *Rochester White Lead Company* v. *The City of Rochester*, 3 Comstock, 463, is also directly in point here. The plaintiff brought suit against the defendant for damages occasioned by the unskillful building of a culvert by the agents of the city, whereby the water was set back upon the premises of the plaintiff. The charter of the City of Rochester provided that " it should have power to cause common sewers, drains, vaults and bridges to be made in any part of the city "—thus, it will be seen, leaving it discretionary with the authorities to make these improvements or not; but the Court held that having undertaken to execute the power, the law held it responsible for any damages resulting from its negligent performance, and affirmed the judgment below, which was for the plaintiff.

The following language, employed by Chief Justice Nelson in the case of the *Mayor etc. of New York* v. *Furze*, 3 Hill, 612, has been repeatedly adopted as correctly declaring the law, although other portions of his opinion have been disapproved : " But, independent of this principle, the duty which the defendants are charged with neglecting is quite obvious in another view. The sewers in question were constructed by the corporation under the power conferred by the section of the statute already mentioned. If, therefore, we concede that the execution of the power was in the first instance optional on the part of the corporation, yet having elected to act under it, they must be held responsible for a complete and perfect execution."

In this last case it was held that the City of New York, having opened sewers, was bound to keep them in good condition ; for, says the Chief Justice, " It would be highly unjust to allow that after constructing these works the corporation might refuse to keep them in repair, and thus leave the streets in which they have been placed in a worse condition than before they were put there." Will the same rule apply to the City of Virginia with respect to the streets ? No : because the law in express terms leaves the matter of repairing the streets discretionary with the authorities, as it does the opening of streets in the first instance. Had the law simply provided that the streets might be opened, then the rule would apply here ; but their having gone further and left the repairing and keep-

ing in order discretionary, it cannot be held that the city is liable for a refusal to repair a street which, in the first instance, was properly opened and put in good condition. It is, like an individual under like circumstances, liable, not for what it does not do, but for what it does in a careless and negligent manner. (*Mills v. The City of Brooklyn*, 32 N. Y. 489.) If the defect in the street where the plaintiff received his injuries was not the result of wear and tear, but it was left in that condition by the authorities when they opened the street, then the city is liable for injuries resulting therefrom to those exercising proper care. But if the street was, when opened, put in good condition, and the defect occurred afterwards, but not by the direct act of the defendant, it is not liable.

It is manifest from what is said that it is necessary for the plaintiff to allege and prove that the street where the injuries resulted was opened by the city, and that the pitch or defect was made by it, or that it was left in that condition when the street was opened. These facts are not alleged in the complaint, nor were they proven at the trial.

The judgment must be reversed, with leave granted plaintiff to amend his pleading in accordance with the views here expressed. It is so ordered.