CITY OF LAS VEGAS, A MUNICIPAL CORPORATION, APPELLANT, *v.* FRED SCHULTZ, RESPONDENT.

No. 3230

November 5, 1938.

83 P. (2d) 1040.

*Harry H. Austin,* for Appellant.

*Roland H. Wiley* and *Leo A. McNamee,* for Respondent.

**OPINION**

By the Court, TABER, J.:

About 7:50 o'clock on the evening of July 6, 1934, respondent, plaintiff in the lower court, while riding with Dave Holland in the latter's automobile on Clark Avenue, in the city of Las Vegas, was seriously injured when the car collided with a load of poles which had been abandoned and left on said street about four o'clock in the afternoon of said day. Claiming that his injuries were the result of the city's negligence, respondent, after the rejection of his claim for compensation, filed suit in the Eighth judicial district court, Clark County, for $75,000 damages. After a trial by the court, without a jury, judgment was rendered in favor of plaintiff and against defendant (appellant) in the sum of $4,743. Defendant's motion for a new trial was denied, and it has appealed to this court from said order denying a new trial and from said judgment and all intermediate rulings, proceedings and orders affecting the rights of defendant and specified by it in the record and bill of exceptions.

In the trial court defendant demurred to plaintiff's fourth amended complaint upon the ground that it failed to state facts sufficient to constitute a cause of action, and appellant's first assignment of error on this appeal is the action of the district court in overruling said demurrer. Appellant specified the following particulars in which, as it contends, said complaint is fatally defective: It leaves an inference that the injuries were due to contributory negligence on the part of plaintiff; it shows that the obstruction was in an outlying district near the open country highway; it alleges that all of the persons who had passed the abandoned load of poles

prior to the accident observed the said obstruction; it does not allege that at the time the accident occurred, there were any other cars or traffic at the place where it happened; there is no allegation that the highway was curved or not level, or that there was anything to distract the attention of plaintiff or any one in the automobile so as to prevent their seeing the obstruction; said complaint does not allege who was driving the car; no fact is alleged exculpating plaintiff from the inference that the proximate cause of the accident was due to his own negligence; it is not alleged that it was dark at the time of the collision, or that it was cloudy or stormy or raining, or that there was anything to prevent one's seeing the obstruction; there is no allegation showing why the accident happened; it is not alleged that plaintiff knew of the custom of the police department and the street department to remove obstructions from the streets or highways; it is not alleged that plaintiff did not know the obstruction was there; the complaint shows that it was only one hour and twenty minutes from the time the acting night chief of police received actual notice of the obstruction, until the accident happened; it is not alleged whether the superintendent of streets was on or off duty when notified regarding the obstruction by said acting police chief, at 6: 30 p. m.; the complaint is silent as to whether there was any duty resting upon the superintendent of streets when off duty and at home, to remove obstructions, but it does show that notice came to him at his home, which was one and one-half miles from said obstruction; the complaint shows on its face that, after notice was given to the city, sufficient time had not elapsed to charge it with negligence.

Following is a summary of those portions of the complaint having some bearing upon appellant's contention that said complaint does not state facts sufficient to constitute a cause of action: Clark avenue is the main traveled thoroughfare leading into the city of Las Vegas from the northern section of Nevada. The frequency

of motor vehicle traffic is greatly increased both night and day during the months of June and July, by reason of the fact that numerous persons living in the more congested area of said city travel, during those months, to and from Lorenzi's park, a place of amusement and recreation located within the confines of said city. By the charter and certain ordinances of said city (specified and identified in said complaint) it was made the duty of its officers and employees of the street and police departments to remove obstructions from said street at the place where the accident happened, or otherwise guard against the same as an element of danger to persons lawfully traveling thereon. During the evening, between sunset and ordinary bedtime of the 6th day of July, 1934, an obstruction of an unusually dangerous character, consisting of a wagon or trailer loaded with poles approximately 20 feet in length, was left to remain on said street, unoccupied and unattended, by some third person, from about two o'clock p. m. until eight o'clock p. m. of said day, without any lights, signals or other suitable warning to persons traveling along said street in the nighttime. Among the many persons who, traveling in motor vehicles in each direction, passed and observed said obstruction were officers and employees of the police and street department of the defendant city. At the time of the accident, and for many years prior thereto, it has been the custom and usage and was the duty of the policemen of said city immediately to remove such obstructions or appropriately guard the same so as to warn and protect persons traveling along said street, or to report the existence of such obstructions to the chief of police, who would in turn report to the superintendent of streets; or to report the existence of such obstructions directly to the superintendent of streets. It had also been the custom and usage of the officers and employees of the street department, when observing such obstructions on any of the streets and highways of said city, immediately to remove such obstructions or appropriately guard the same or report their existence

directly to the superintendent of streets. Actual notice of the existence of said obstruction was given to the acting night chief of police, who communicated knowledge thereof to the superintendent of streets prior to sunset, to wit, at approximately 6: 30 p. m.; whereas the accident did not occur until about 7: 50 p. m. The place where the superintendent of streets received notice, as aforesaid, was approximately one and one-half miles from the location of said obstruction. More than a reasonable time elapsed within which defendant city could have provided, by the exercise of ordinary care and diligence, suitable light signals or used other proper means to warn and thus prevent accident and injury to persons traveling said street by motor vehicle in the nighttime, and particularly injuries to plaintiff. During the nighttime of said day, about 7: 50 p. m., an automobile in which plaintiff was riding along said street, without any negligence on his part, collided with said obstruction with the result that plaintiff sustained serious, painful and permanent injuries (fully described in the complaint). The negligence of the city was the proximate cause of the injuries and damage sustained by the plaintiff. In a second count of the complaint it was further alleged that the defendant, knowing of the existence of said defective obstruction, undertook to eliminate the same and also elected to place suitable lights as warning signals at or near said obstruction, but failed to use ordinary care and diligence in so doing. "That this cause of action is based upon the fact that defendant negligently permitted the same to remain upon said street and negligently failed to guard against the same as an element of danger after having knowledge of the existence thereof and after having elected and undertaken to remove the same or guard against the same; and upon the further reason that Defendant carelessly and negligently attempted and failed to place at, near, on or about said obstruction red lights or to use other means properly to warn and protect persons traveling upon said street after knowledge of the

existence of said obstruction and after having elected and undertaken to do so."

■■ In Nevada, as in the majority of jurisdictions, where the gist of an action is negligence, plaintiff need not negative contributory negligence on his part. Generally, contributory negligence is regarded as a matter of defense to be pleaded by the defendant. Konig v. Nevada-California-Oregon Ry., 36 Nev. 181, 135 P. 141; Smith v. Smith-Peterson Co., 56 Nev. 79, 45 P.(2d) 785, 48 P.(2d) 760, 100 A. L. R. 440; 45 C. J. 1104, 1105; 20 R. C. L. 183, 184; 29 C. J. 710, 711; 43 C. J. pp. 1231, 1232; 13 R. C. L. pp. 498, 499, sec. 409. In the instant case the complaint does not, in our opinion, dis-· close on its face that plaintiff was guilty of contributory negligence, or that his acts were the proximate cause of his injury. Furthermore, the complaint expressly alleges that the accident occurred without any negligence on the part of plaintiff.

■■ In actions of this kind the complaint must show a duty owing from the defendant to the plaintiff, a breach of that duty; that the plaintiff was injured and damaged; and that defendant's negligence or breach of duty was the proximate cause of the injury or damage. Huddy, Cyclopedia of Automobile Law (9th ed.), vol. 15–16, p. 176; 5 Am. Jur. 834, sec. 597. The complaint in this case meets the requirements of the aforesaid rule. Plaintiff is not required to make a detailed and minute statement of the circumstances of the cause of action. Huddy, op. cit., vol. 15–16, p. 171; O'Brien v. Wilmington Provision Co., 4 W. W. Harr. 214, 34 Del. 214, 148 A. 294.

■ The complaint does not in so many words allege that it was dark at the time of the collision, but it does allege that the street was negligently permitted to remain in an unsafe condition "during the evening, between sunset and ordinary bedtime of the 6th day of July, 1934," and that the accident happened "during the nighttime and approximately at the hour of 7:50 p. m." of said day. These allegations, in our opinion, are

sufficient. The common and ordinary meaning of the word "dark" is, destitute or partially destitute of light; wholly or partially without light. "Evening" would have been a better word to use than nighttime, but this inaccuracy on the part of plaintiff is of no consequence, because the date, the hour and approximate minute when the collision occurred are expressly alleged in the complaint. Furthermore, the alleged negligence of defendant is based not only upon the failure to put lights at the place where the obstruction was, but upon its failure to use other proper means to warn and protect travelers against accident and injury.

We know of no rule requiring plaintiff to allege that he did not know the obstruction was there. 43 C. J. p. 1233; 29 C. J. pp. 700–702, 704, n. 3; 711, n. 2. In this connection, appellant argues that respondent and Holland had passed the load of poles on their way to Lorenzi's about half an hour before the accident. But we are now concerned with a question of pleading—the sufficiency or insufficiency of the facts alleged in the complaint to constitute a cause of action; and the complaint does not allege or show that plaintiff and Holland, or either of them, passed the obstruction prior to the time of the collision.

■ The contention that the complaint is fatally defective because the city had actual notice of the obstruction less than two hours before the accident happened requires little discussion. The complaint does not show on its face that the city could not, by the use of ordinary care and diligence, have removed the obstruction or taken effective means to warn travelers of its existence. The question, therefore, was one of fact, to be determined by a jury or the trial court according to all the surrounding facts and circumstances. 43 C. J. 1004, n. 52.

We have considered all the other reasons advanced by appellant in support of its contention that the complaint does not state facts sufficient to constitute a cause of action, but find them without merit.

Appellant's second assignment of error is based upon the action of the trial court in sustaining plaintiff's demurrer to defendant's second affirmative defense, which alleged that plaintiff had not presented his claim against the city within two months, as required by a certain section of an ordinance of said city reading as follows: "Every person having a claim against the city of Las Vegas shall within two months after the last item of the account accrues, present a demand therefor in writing to the Board of City Commissioners of Las Vegas, Nevada, against which such claim or demand is held, verified by the affidavit of himself or agent, stating minutely what the claim is for, and specifying each special item, and the date and amount thereof."

Respondent, whose claim against the city was presented within six months from the time of the accident, contends that the foregoing section was not applicable to his claim, which was filed within the time prescribed by sec. 1259 N. C. L. 1929, reading as follows: "All demands and accounts and all claims of whatsoever kind, character or nature, or however the same may have originated against any incorporated city in this state, must be presented to the city council of said city, duly authenticated, within six months from the time such demands or accounts became due or payable, and within six months from the time the acts from which said claims originated shall happen."

■ We are satisfied that plaintiff's claim was filed in time. Dawes v. City of Great Falls, 31 Mont. 9, 77 P. 309. And see 19 R. C. L. 1042, where it is said: "On the other hand, the use of the word 'account' in connection with the requirement of the presentation of claims is generally held to be an indication that claims arising from a tort were not within the contemplation of the legislature."

Appellant's third assignment of error is based upon the action of the trial court in sustaining plaintiff's demurrer to defendant's third affirmative defense, wherein it is first alleged that, by virtue of "An Act to

provide a general highway law for the State of Nevada," approved March 23, 1917, Statutes of Nevada 1917, chap. 169, pp. 309–321, secs. 5320–5355 N. C. L. 1929, Clark avenue was made a part of the state highway system, to wit, route No. 5, and has ever since been a part of said system. Said third affirmative defense sets forth a copy of a project agreement under the federal aid road act, 23 U. S. C. A. sec. 1 et seq., and goes on to allege that the state highway department proceeded to grade, gravel and oil-surface the said highway, and otherwise improve the same, and ever since the date of the execution of said project agreement "the said state highway department, to the exclusion of the city of Las Vegas and all others, has proceeded to construct a first-class highway and improve the same and did proceed to at that time and has continued ever since to repair and maintain the said highway to the exclusion of the defendant, with state highway funds. * * *" Sec. 5327, N. C. L. 1929, being sec. 8 of said general highway law, designates the particular piece of road with which we are concerned in this case as state highway route No. 5. Sec. 5329, N. C. L. 1929, provides in part that the highways which are constructed or improved by the department of highways in accordance with the routes set forth and described in said section (including said route 5) "shall be state highways and shall be constructed or improved and maintained by the department of highways * * *."

Sec. 5335 N. C. L. 1929 reads as follows: "All work of construction and improvement of the state highways as defined and established under the provisions of this act shall be under the supervision and direction of the state highway engineer, and shall be performed in accordance with the plans, specifications, and contracts prepared and executed by him therefor."

Sec. 5341 N. C. L. 1929 provides that: "Whenever a road, being a part of the system of state highways herein created, shall be constructed or improved under the provisions of this act, the board shall thereafter keep all

such roads in repair and the total cost of such maintenance shall be paid out of the state highway fund."

Appellant takes the position that where the legislature enjoins upon the state highway department the duty to construct and maintain highways within the city limits, the city is relieved of any obligation to maintain, or liability for failure to maintain; that municipalities are not liable for defects in highways which it is not their duty to repair, and that the liability follows the duty to construct, maintain and repair.

Respondent, on the other hand, points out that by virtue of the charter of defendant city (Statutes of Nevada 1911, chap. 132, pp. 145–183) it was given control of the use of streets, including said Clark Avenue, power to remove obstructions, regulate traffic thereon and pass ordinances in relation thereto; that pursuant to said charter and certain city ordinances admitted in evidence at the trial, the city created a police and street department, made it a public offense to leave an obstruction on any street without permission of the board of commissioners, gave the chief of police authority to order removal of such obstructions, power to officers of the police department to direct and control traffic, and to make arrests for violations of traffic regulations, and generally to regulate and control the use of streets of the city of Las Vegas. Respondent further points out that warning signals (flares) were in fact maintained by the street department for use at obstructions of this kind. Respondent contends that the ordinary "duty-creating" intent of the words "construct, improve and maintain" is not such as to relieve a municipality of its common law duty to keep its public streets in a condition safe for ordinary travel, especially with reference to the removal of an obstruction upon the surface thereof, which is an obstruction relating to traffic regulation and control, and the power to remove which is vested in the municipality by its charter. In cases of this kind, argues respondent, there exists correlative duty that is coextensive with the right and power of control. "In other

words, when control is given to a city, it becomes subject to a civil liability for failure to perform the correlative duty."

■ Appellant cites ten cases to support the proposition that where the legislature enjoins upon the state highway department the duty to construct and maintain highways within the city limits, the city is relieved of any obligation to maintain or liability for failure to maintain; but not one of said cases involved a temporary movable obstruction left by a third party on the surface of a street or highway, and in no way a part of, attached to or connected therewith. Removing, guarding, or placing warning lights or signals at or near such an obstruction as a load of poles left on a highway by a third person does not, in our opinion, constitute constructing, repairing, improving or maintaining a highway within the meaning of those words as used in the Nevada highway statutes cited by appellant. In the instant case the city was empowered, and it was its duty, to remove the load of poles, or to guard, or place warning lights or signals at or near it, for the purpose of preventing accidents and injuries.

■ Much of what has been said in connection with the first assignment of error is applicable to appellant's fourth assignment, based on the lower court's overruling of defendant's objection to the introduction of any evidence when plaintiff's first witness was called and sworn. Appellant stresses the fact that the complaint does not allege that plaintiff was a guest, how many people were in the automobile, whether there were others in it, or by whom it was being driven. No authorities have been cited, and we know of none, holding that any of such allegations is essential to the statement of a cause of action in a case of this kind.

Appellant contends (assignment X) that the district court erred in denying its second motion for nonsuit. Two reasons are advanced: First, that the evidence showed there was insufficient time between notice of the obstruction and the collision to charge the city with

negligence; second, that even if the city was negligent, its negligence was not the proximate cause of plaintiff's injuries.

There was substantial evidence tending to show constructive notice, and positive testimony showing actual notice to the city at least one hour and three quarters before the accident happened. The obstacle, so dangerous that even a private citizen reported its existence to the police upon his return from swimming at Lorenzi's place, was within the city limits. It is clear the trial court could not say, as a matter of law, that the city could not, by the exercise of ordinary and reasonable diligence, have either removed the obstruction or taken appropriate means to warn and protect travelers against collision with it.

On the question of proximate cause, appellant directs attention to Dave Holland's testimony that he was driving ten or fifteen miles an hour; that he and plaintiff must have passed the obstruction about 7:00 or 7:30 o'clock that evening, on their way from town to Lorenzi's; that before the accident he, Holland, had probably taken a couple of glasses of beer—that he and plaintiff may have had a couple of drinks together that afternoon; that he could have seen the silhouette of the load of poles if he had been looking, but that he was watching an approaching car; that he knew the load of poles was there when he went out to Lorenzi's earlier in the evening; that plaintiff did not warn him that he was in proximity with said obstruction; that plaintiff did not say anything to him about exercising care; that plaintiff was not asleep at the time, and was, so far as he knew, in full possession of his faculties; that he, Holland, could have seen the poles if he had been watching his right of way.

It should be added that Mr. Holland also testified the lights were lit on the car that was coming toward him, as well as his own car; that he was slowing up, driving slow, when he was meeting the other car; that he did not see the poles just before the collision; that he was

driving very slow; that when he first saw the lights of the other car he would say it was on the far side of the load of poles; that the other car might have been a hundred feet away when he first saw its lights; that he slowed down his speed at that time; that the lights on the other car finally got to the point where he couldn't see what was in front of him; that he did not stop his car—the load of poles stopped it; that it was not necessary for plaintiff to call his attention to the fact that there was a load of poles there and that perhaps it might be well to proceed cautiously, because he was proceeding very cautiously; that he was driving on his side of the highway; that the reason the load of poles was not discernible might have been because of the lights of the oncoming car—they might have been straight ahead, so they wouldn't hit the load of poles at all; that when he drives at night, he certainly does watch the lights of oncoming cars; that he does not like to drive at night, on account of what might be in the road on approaching lights on the other cars; that he was watching the approaching car and not the road; that he knew there had been a load of poles on the highway, and that he had not been told, nor did he know, whether they had been removed.

Homer E. Grove, who was a deputy sheriff of Clark County at the time of the accident, testified that on the evening of July 6, after dinner and before the accident happened, he had a call requiring him to go out on Clark avenue; that in doing so, he drove past the load of poles; that it was some time near 8: 00 o'clock, but it was after dusk and he had his lights on; that there was no one at the wagon at the time he passed it; that there were no lights on the wagon; that just before he reached the point where he could see the wagon load of poles in the range of his lights, another car with lights on came toward him and he saw that car pull over to his right; that he did not know just what to do until he started to pull over to his left, and then he saw the load of poles; that he stopped and let the other car go by,

otherwise they would have had an accident; that he was right up against the obstruction when he stopped; that he was in quite a hurry, and the reason he stopped was due to the other lights—he couldn't exactly see what was going on there.

The trial court's ruling denying defendant's second motion for a nonsuit was correct. McQuillin, Municipal Corporations, vol. 7, p. 268, n. 38; pp. 272, 273, n. 54, secs. 3014, 3015, 3017, 3031; 29 C. J. p. 704, nn. 83, 84; 43 C. J. pp. 1281, 1282, 1285, 1286, 1287, 1288, 1289.

Assignments XI, XII and XIII may be considered together. They are, respectively, that the lower court erred: In rendering its decision in favor of plaintiff; in denying defendant's motion for a new trial, based on the ground, among others, of insufficiency of the evidence to justify the decision of the court; and in rendering its judgment in favor of plaintiff. In view of what has already been said in this opinion, the two main questions remaining to be discussed in connection with the three assignments last mentioned are: First, whether, under all the evidence, defendant had sufficient notice of the obstruction to enable it, by the exercise of ordinary diligence, to either remove the obstruction, or take proper measures to warn travelers of its presence; second, whether plaintiff was guilty of contributory negligence, and if so, whether such negligence was a proximate cause of his injuries.

The conclusion of the trial court that defendant was negligent in failing either to remove the obstacle or to warn travelers of the danger, was clearly correct. Entirely aside from any considerations of constructive notice, the evidence shows that the city had ample actual notice. Motorcycle Officer Ward notified the superintendent of streets, at or a little before six o'clock, that the load of poles was in the street, and where it was. C. L. Ronnow, immediately after reaching his residence upon returning from a trip to Lorenzi's, and not later than 7: 05 o'clock, informed the police station that the

obstruction was on the highway, and that it looked dangerous. Shortly after receiving this information, Assistant Chief of Police Mackey radioed two officers in car 1 to investigate. Not later than 7:20 o'clock they returned and reported that they could not remove the obstruction, and that some lights had better be placed there. Mackey, not later than 7:20 o'clock, telephoned to the superintendent of streets, then radioed car 1 to watch the road, as "lights were coming over." These instructions were not carried out, so the obstruction remained without lights or other warnings until the accident happened—after which the flares arrived. The record fails to disclose any good excuse for failing, in some effective manner, to warn travelers pending the arrival of the flares.

We have now to consider whether plaintiff. was guilty of contributory negligence. Appellate points out that Schultz and Holland had been drinking, and contends that defendant's exhibits (photographs of Holland's car after the accident) show that when the collision occurred, the car was traveling faster than Holland says it was. The city further contends that contributory negligence is shown by Holland's testimony that he could have seen the load of poles if he had been looking straight ahead instead of at the lights of a car approaching from the opposite direction. Furthermore, argues appellant, Holland admits that he and plaintiff must have seen the obstruction when they were on their way from the business section of the city to Lorenzi's less than an hour before the accident occurred. Much stress is laid upon the fact that plaintiff, according to his own testimony, could remember nothing from between eleven and twelve o'clock on the morning of July 6 and the time consciousness returned to him in the hospital. Another circumstance to be considered, according to appellant, is the fact, as it claims, that Holland asked to be taken back to Lorenzi's, where he lived, rather than to a hospital.

The district court found as a fact that plaintiff,

at the time of the accident, was not so intoxicated that he otherwise could and should have seen the load of poles. Holland denies that he asked to be taken back to Lorenzi's after the accident. He testified that at this time, when Mrs. Bernstein testifies he did make such a request, he was irrational, though conscious. He testified further that he did not at that time know who took him back to Lorenzi's. Dr. Balcom testified that plaintiff's injuries could be the cause of loss of memory. He described the injuries as follows: "He had a large scalp laceration extending from about the left eyebrow back into the scalp, this laceration being in the neighborhood of six inches long. This laceration made a sort of a flap that could be turned down somewhat, and when it was it exposed the skull, and the skull had multiple fractures which were depressed, or the bones sank down into the brain tissue and permitted some of the brain tissue to exude or look out through between the fragments of the bones." No one testified that either Schultz or Holland was intoxicated, or that either of them showed any signs of intoxication. From the record it is plain that we would not be justified in setting aside the lower court's finding as to Schultz; nor can we say that the testimony shows Holland to have been under the influence of liquor.

The photographs of the car, taken after the accident, indicate that it may not have been going very slow, as testified by Holland, its owner and driver. But these exhibits alone are not sufficient to authorize this court to say that the car was being driven at an unreasonable speed. This was a question of fact for the trial court, which found that plaintiff did not fail or omit to exercise ordinary care for his own safety and security. Holland testified that he slowed up to meet the oncoming car, and that he was going very slow when the collision took place. The poles were of irregular length, extended many feet back from the wagon or trailer. If the record showed clearly that the car was going at an unreasonable speed, there would be good ground for concluding

that there was contributory negligence. Brown & Root v. Duncan, Tex. Civ. App., 40 S. W. (2d) 244.

Holland's testimony that he could have seen the obstruction if he had been looking straight ahead is simply a circumstance to be considered with all the other evidence as bearing on the question whether he was exercising the care of a reasonable man under all the circumstances. A careful driver will watch the lights of an oncoming car as well as the road directly in front of his own car. It would certainly be dangerous to watch either, to the exclusion of the other. In a recent case in Kansas the fact that plaintiff was looking intently only at the ground immediately in front of his car was considered by the supreme court as a circumstance tending to show contributory negligence. Parsons v. State Highway Commission, 146 Kan. 476, 72 P. (2d) 75.

In West v. Marion County, 95 Or. 529, 188 P. 184, the approach to a culvert was a defective fill. "It was fair time, and the plaintiff was driving on the road from Oregon City toward Salem. It was dark, and when the plaintiff reached the fill in question, he met a number of automobiles coming from the fair. Several of these had their lights lit, and one in particular did not dim its lights, and the reflection in plaintiff's eyes blinded him so he could not see the road. Under these conditions he got too far to the right, and his car ran off the grade and down the bank, causing the injuries complained of." [Page 185.] In this case, a judgment of the circuit court in favor of plaintiff was affirmed.

■ The fact that at the moment of the collision the driver was watching the lights of the oncoming car is but a circumstance to be weighed by the trial court, along with all the other evidence, in determining whether Holland was acting as a reasonable man would act in like circumstances.

■ The testimony indicates that plaintiff and Holland may have forgotten, at least momentarily, the obstruction which they "must have seen" less than an

hour before. But this again is only a circumstance for the consideration of the trier of facts. As was said in Meindersee v. Meyers, 188 Cal. 498, 205 P. 1078, 1081: "Furthermore, even forgetfulness of a known danger will not always operate to prevent such recovery for to forget is not negligence unless it shows a want of ordinary care. Generally the question is one for the jury * * *." And see George v. City of Malden, 274 Mass. 606, 175 N. E. 53; Robinson v. City of Alexandria, La. App., 174 So. 681. It is also to be borne in mind that plaintiff and Holland could not be expected to assume that the city would leave such a perilous obstruction on the highway without taking effective measures to warn and protect travelers, especially at a time when night was coming on.

The rule that a guest in a vehicle is not barred from recovery for harm resulting from the negligence of a third person by the contributory negligence of his host (Restatement of the Law, Torts, vol. 2, sec. 490) need not be invoked in the instant case, as the record does not show that Holland was guilty of contributory negligence.

Except where plaintiff's own evidence shows him guilty of contributory negligence, the burden of proving it is upon the defendant. And a presumption of ordinary care weighs in his favor. Lambert v. Emise, 120 N. J. L. 164, 199 A. 44.

Assignments V, VI, VII, VIII and IX have each received the careful consideration of the court, but none of them, in our opinion, is of sufficient merit to require any discussion.

We think the district court reached the correct result in this case, and finding no error in the record, the judgment and order appealed from are affirmed.