JUANITA RICE, SPECIAL ADMINISTRATRIX OF THE ESTATE OF DAVID H. ORMONT, DECEASED, APPELLANT, *v.* CLARK COUNTY, A POLITICAL SUBDIVISION OF THE STATE OF NEVADA; HARLEY E. HARMON, ARTHUR OLSEN AND CLESSE M. TURNER, INDIVIDUALLY, AND AS THE CLARK COUNTY COMMISSIONERS; PRESS LAMB, INDIVIDUALLY, AND AS SUPERINTENDENT OF ROADS OF CLARK COUNTY, RESPONDENTS.

No. 4588

May 27, 1963                                    382 P.2d 605

BADT, C. J., dissented.

*Woodburn, Forman, Wedge, Blakey, Folsom and Hug,* of Reno, for Appellant.

*Edward G. Marshall,* District Attorney, *Charles L. Garner,* Chief Civil Deputy District Attorney, Clark County, and *V. Gray Gubler,* of Las Vegas, for Respondents.

## OPINION

By the Court, MCNAMEE, J.:

This is an action to recover damages for the wrongful death of one Ormont brought by his special administratrix against several defendants. Appeal is from the judgment of dismissal entered in favor of the above-named respondents.

Three questions are presented on this appeal:

1.   Were the respondents entitled to a dismissal on the ground of governmental immunity?

2.   Is the presentation of an unaudited claim to the county auditor a condition precedent to instituting a suit against the county upon such claim?

3.   Is a misjoinder of parties a cause for dismissal of a cause of action?

If any of the above three questions can be answered in the affirmative, the judgment of the trial court must be affirmed.

As to the first question we are required to determine whether the doctrine of sovereign immunity insofar as it applies to counties and county officials in the construction and maintenance of public roadways should be repudiated.

It is conceded that the weight of authority sustains county immunity when the county is acting in its governmental capacity, and likewise, the weight of authority establishes the rule that the maintenance of roads and highways by a county is a governmental function.

We recognized the rule that a county cannot be sued without legislative consent in McKay v. Washoe General Hospital, 55 Nev. 336, 33 P.2d 755, 36 P.2d 78. But in Granite Oil v. Douglas County, 67 Nev. 388, 219 P.2d 191, 16 A.L.R.2d 1069, we held that the rule has no application when a county acts in a proprietary capacity, and in Hughey v. Washoe County, 73 Nev. 22, 306 P.2d 1115, this court reversed an order of dismissal against the county apparently for the same reason, although no mention was made whether or not the county was acting in its proprietary capacity.

With respect to cities in their operation and maintenance of streets, a different rule has been followed in this state.

In McDonough v. Virginia City, 6 Nev. 90, 93, the city was held subject to liability for its negligent construction of an intersection of two of its public streets. A state statute provided that the city had power to lay out, extend, and alter its streets. The court there said that the language conferring this power is permissive. "But although it is thus left optional with the city to open streets * * *, still if it undertake to do it, the act must be done with that degree of care for the rights and personal safety of individuals which natural persons are required to exercise under similar circumstances."

In Barnes v. City of Carson, 33 Nev. 17, 43, 110 P. 3, 4, where the city had been given a similar discretionary power as to its streets, this court said: "When it was

established upon the trial that the excavation was made in the street by the city and negligently left in the nighttime without proper lights to indicate the same, and that by reason thereof the plaintiff was injured, there was nothing left for the court and jury to determine but the amount of damages."

To the same effect is the case of Pardini v. City of Reno, 50 Nev. 392, 400, 401, 263 P. 768, 770, 771, where the court held the duty of the city, implied from the grant of exclusive control over its streets, "is not a public duty owing to the public alone, but a private, corporate duty * * *. The immunity extended to legislative or discretionary acts of a municipal corporation does not apply to corporate acts of a purely ministerial character." Thus for the first time this court based a city's liability on the ground that its maintenance of streets constitutes a proprietary function.

In Las Vegas v. Schultz, 59 Nev. 1, 83 P.2d 1040, the liability of the city for negligently allowing an obstruction to remain on a highway was upheld without any discussion of municipal immunity.

Whether the existing rule in this state imposing liabilities upon cities for injuries resulting from their failure to keep streets in a reasonably safe condition is based on the theory that the duty to keep streets safe is a corporate or proprietary duty, or whether the duty is considered governmental and liability is regarded as an exception to the general rule of nonliability for acts done in the exercise of governmental duties, the result in either case is the same.

We are now asked to extend this liability to counties maintaining roads under powers similar to those granted to the cities.

NRS 244.155 provides: "The board of county commissioners shall have power and jurisdiction in their respective counties to lay out, control and manage public roads, turnpikes, ferries and bridges within the county, in all cases where the law does not prohibit such jurisdiction, and to make such orders as may be necessary and requisite to carry its control and management into effect."

NRS 403.090 states: "The board of county highway commissioners shall have exclusive control of all matters pertaining to the construction, repairing and maintaining of public highways, roads and bridges within its county."[1]

Under the decision of McDonough v. Virginia City, supra, such a grant of power was held to be permissive rather than mandatory, and if a city exercised its discretion to exercise such powers, it would become liable for its negligence in so acting.

Is there any logical reason why on the one hand a city should be liable for its negligent construction or maintenance of its public roadways and a county under the same or similar grant of power should not? We could easily supply an affirmative answer by holding that a county in the operation of its roads and highways acts in a corporate or proprietary capacity as was said with respect to the City of Reno in the Pardini case. Then under the authority of Granite Oil v. Douglas County, supra, liability of the county necessarily would follow.

We prefer, however, under the circumstances of this case to say that sovereign immunity does not extend to counties whether the operation of roads is considered a governmental or a proprietary function. See Holytz v. City of Milwaukee, 17 Wis.2d 26, 115 N.W.2d 618.

Although this court in Taylor v. State and University, 73 Nev. 151, 311 P.2d 733, held that the state was immune from liability for negligence, we recognized that the rule of sovereign immunity has been severely criticized.

In Johnson v. City of Billings, 101 Mont. 462, 54 P.2d 579, 581, 583, 584, the action was against both the City of Billings and the County of Yellowstone. In holding that cities and counties stand in the same relation to the traveling public with respect to the care of highways and liability for injuries thereon, the court said: "First, as to the differentiation between cities and counties, it

---

[1]NRS 403.020 provides that the board of highway commissioners shall be composed of the regularly elected and qualified county commissioners.

is correctly said: 'The reason of the rule which, in many cases, charges a city * * * with liability and, under the same conditions of fact, exonerates a county, is artificial and is to be sought for in historical sources; it is not supported by legal reason or analogy.' 5 Thompson on Negligence, 302. The basis for the exemption of counties, originally, being lack of corporate existence and want of power to raise corporate funds, where counties are, by law, made public corporations and empowered to raise funds, 'the reason for the rule ceases and the rule ought to fall with it; * * * it does not seem a sufficient answer to this argument to say that counties are political subdivisions of the state, for cities are political subdivisions * * * as fully as counties are, and in this respect, the keenest vision can discover no difference between the two classes of public corporations.' 1 Elliott on Roads & Streets (4th Ed.) § 599.

* * * * *

"Being unembarrassed by any former opinion of this court on the question directly before us for determination, we discard precedent and refuse to perpetuate the error of other courts throughout the Union * * *."

To soften this blow, however, the Montana court unhappily added: "In repairing the highway, the county was acting voluntarily and in its proprietary capacity, and not under the mandate of the statute to keep the highways in repair."

In 1961 the California Supreme Court decided the case of Muskopf v. Corning Hospital District, 55 Cal.2d 211, 213, 11 Cal.Rptr. 89, 90, 359 P.2d 457, 458. The plaintiffs contended that operating a hospital is a proprietary function of government. In holding the defendant liable for negligence that court refused to base its action on such dubious ground, and stated: "After a re-evaluation of the rule of governmental immunity from tort liability we have concluded that it must be discarded as mistaken and unjust."

The case of Stone v. Arizona Highway Commission, 381 P.2d 107 (Ariz. 1963), abolished the rule of sovereign immunity in Arizona. The supreme court there said:

"After considering all the facets of the problem, we feel that the reasoning used by the California court in Muskopf v. Corning Hospital District, supra, has more validity and therefore we adopt it. The substantive defense of governmental immunity is now abolished not only for the instant case, but for all other pending cases, those not yet filed which are not barred by the statute of limitations and all future causes of action. All previous decisions to the contrary are specifically overruled."

In this opinion we need not go as far. We hold merely that sovereign immunity does not extend to counties so as to relieve them for their negligent operation of roads.

It is contended that it is for the legislature and not the courts to remove immunity. We so stated in Taylor v. State and University, supra. There we were considering the liability of the State of Nevada and the University of Nevada for negligence. Here, where only a county's liability is involved, we do not hesitate to say that since its immunity was court made, this court as well as the legislature is empowered to reject it. Muskopf v. Corning Hospital District, supra.[2] Moreover, in Granite Oil v. Douglas County, supra, without awaiting legislative action, we wiped out county immunity from tort liability when a county is engaged in a proprietary function.

If, in this case, sovereign immunity does not extend to the county as such, obviously it would not extend to the individual county officials either.

The next question concerns the presentment of appellant's claim to the county in accordance with the following statutes:

NRS 244.245: "1. No person shall sue a county in any case for any demand, unless he shall first present his claim or demand to the board of county commissioners and the county auditor for allowance and approval,

---

[2]See article entitled "Sovereign Immunity" commenting on Muskopf v. Corning Hospital District in 38 Calif.S.B.J. 177.

and if they fail or refuse to allow the same, or some part thereof, the person feeling aggrieved may sue the county."

NRS 244.250: "1. All unaudited claims or accounts against any county shall be presented to the board of county commissioners, duly certified by the claimant, within 6 months from the time such claims or accounts become due or payable. * * *"

NRS 244.255: "No claim which has once been presented and rejected shall ever again be considered or allowed by the same, or any subsequently elected or appointed, board of county commissioners of the same county."

It appears from the record that appellant's claim was presented to the board of county commissioners within the six months' period following the death of Ormont, and was thereafter denied by the board. It does not appear, however, whether the claim was ever presented to the county auditor.

The purpose of these statutes is found in NRS 244.215. This section provides: (1) The county auditor may not sign his warrant until after the county commissioners have by an order allowed the claim; (2) when the commissioners allow the claim, the auditor before payment thereon can be made must endorse on such order his allowance; (3) if the county auditor refuses to allow the claim the order is presented to the board of county commissioners who then can by unanimous vote order the payment of the same; (4) if the auditor allows the claim in part, a warrant shall issue for such part, unless the board by a similar unanimous vote, allows a greater sum; and (5) the auditor may not draw his warrant unless the money is in the particular fund.

We conclude from these enactments that if the county commissioners reject a claim the county auditor is not involved. He has no authority to allow or audit a rejected claim. It is unreasonable to construe these acts as requiring a claim to be filed with or a demand to be made on the county auditor in the event of the complete rejection of an unaudited claim by the commissioners.

The last question is whether misjoinder of parties is a cause for dismissal of a cause of action. NRCP 21 expressly provides that it is not. The contention that the board of Clark County highway commissioners are indispensable parties, when it is composed exclusively of the members of the board of county commissioners, has no merit.

Judgment is reversed and the cause remanded for trial.

COLLINS, D. J., concurs.

THOMPSON, J., being disqualified, the Governor commissioned Honorable Jon R. Collins, Judge of the Seventh Judicial District Court, to sit in his place.

BADT, C. J., dissenting:

I dissent.

Although the majority opinion limits its holding as follows: "We hold merely that sovereign immunity does not extend to counties so as to relieve them for their negligent operation of roads," I am fearful that the clear effect of the opinion will ultimately be the complete abrogation by this court of sovereign immunity. It is frankly conceded by the majority opinion that the weight of authority sustains county immunity when the county is acting in its governmental capacity, and likewise, that the weight of authority establishes the rule that the maintenance of roads and highways by a county is a governmental function. In support of abandonment of the doctrine in its entirety, the opinion relies on Johnson v. City of Billings, 101 Mont. 462, 54 P.2d 579, Stone v. Arizona Highway Commission, 381 P.2d 107 (Ariz. 1963), and Muskopf v. Corning Hospital District, 55 Cal.2d 211, 11 Cal.Rptr. 89, 359 P.2d 457. It might have added Williams v. City of Detroit, 364 Mich. 231, 111 N.W.2d 1; Molitor v. Kaneland Community Unit District, 18 Ill.2d 11, 163 N.E.2d 89, 86 A.L.R.2d 469; Holytz v. City of Milwaukee, 17 Wis.2d 26, 115 N.W.2d 618; Spanel v. Mounds View School District, 118 N.W.2d 795 (Minn. 1962).

The reasons given in the opinions cited, attacking the governmental immunity doctrine are quite persuasive, and most certainly the language used is condemnatory in the extreme of the doctrine itself. Despite the fact that it is still the prevailing doctrine in the United States, including the State of Nevada, this dissent is primarily based, not on the ground that as a matter of public policy it should be retained (upon which I am presently expressing no opinion), but on the ground that an abrupt abrogation of the doctrine, if such action appears advisable as a matter of public policy, should be by way of legislative action.

On such phase of the subject the decisions relied upon are not so persuasive, and are not persuasive at all in view of the decisions of this court and the conditions in this state.

In Granite Oil v. Douglas County, 67 Nev. 388, 219 P.2d 191, 16 A.L.R.2d 1069, we placed counties within the same category as municipal corporations with reference to liability when acting in a proprietary capacity, and held that sovereign immunity did not exist when the county was acting in such capacity. We cited authorities from many states and quoted at length, with approval, from Rhodes v. City of Asheville, 230 N.C. 134, 52 S.E.2d 371, 376, in which the North Carolina court concurred in the view, that a county when acting in its governmental capacity cannot be sued without legislative sanction, and that if it were thought wise to exempt municipalities from tort liability in connection with operation of airports (the point involved in Granite Oil), such exemption "should be expressly granted by the Legislature, rather than by judicial decree."

In Jensen v. Labor Council, 68 Nev. 269, 281, 229 P.2d 908, 913, we quoted Mr. Justice Frankfurter, speaking for the court in International Brotherhood v. Hanke, 339 U.S. 470, 70 S.Ct. 773, 94 L.Ed. 995, to the effect that in the determination of matters of state policy "the clash of fact and opinion should be resolved by the democratic process and not by the judicial sword." Mr. Justice Merrill in writing the opinion of this court noted

that although this was said with respect to the interpretation of statutes or with respect to property or contract rights (Minnesota Mining Co. v. National Mining Co., 3 Wall. 332, 70 U.S. 332, 18 L.Ed. 42), it should likewise apply to torts.

In Springer v. Federated Church, 71 Nev. 177, 180, 283 P.2d 1071, 1072, dealing with immunity of charitable institutions, we were urged to overrule Bruce v. Young Men's Christian Ass'n, 51 Nev. 372, 277 P. 798. While recognizing that "Plaintiff unquestionably has made out a strong and persuasive case for the abandonment of the beneficiary theory there announced," we called attention to the fact that the overruling of the Bruce case would impose liability retroactively so that we must adhere to stare decisis, and referred to Jensen v. Labor Council, supra. We then said: "If an abandonment of the rule of the Bruce case is to be deemed desirable, the abandonment should be prospective rather than retroactive and the determination should be legislative rather than judicial."

We should note here that the State of New York by statute abolished the sovereign immunity doctrine in 1929 (Laws of New York, 1929, ch. 467, § 1), and the State of Washington by statute abolished it in 1961 (Wash. Sess. Laws 1961, ch. 136).

Some comment is necessary on the opinions relied upon in support of the abrogation of the doctrine. The Montana case, Johnson v. City of Billings, supra, bitterly rejecting in the strongest terms the entire doctrine of sovereign immunity, then indicates that the entire opinion is dictum, using the following language: "Conceding, for the purpose of this opinion, that ordinarily the repair of * * * our highways constitutes a governmental function, it is not so with respect to the particular situation presented here," a joint project of the city and county in the construction of a drain ditch for the benefit of both, "for which purpose the county might have been included in a drain district and treated in the same manner as a private corporation." The opinion then referred to an earlier Montana case in which, in

the construction work, "the city and county were each acting in the proprietary, and not in the governmental, capacity."

In Williams v. City of Detroit, 364 Mich. 231, 111 N.W.2d 1, 9, 16, the single headnote informs us that the lower court's holding of governmental immunity was affirmed, because the Supreme Court of Michigan was equally divided. The majority decided to abrogate the doctrine, but for future cases only, thus rendering that part of the majority opinion dictum. In the opinion of Mr. Justice Carr the following was said:

"We have cited herein a number of decisions from various States in support of the general principle that in dealing with the doctrine of governmental immunity from damages for tortious acts committed in carrying out governmental functions the legislature alone is clothed with authority to modify, extend or abrogate such doctrine. Additional quotations from such decisions to those above included herein would be merely cumulative and would extend this opinion to an unnecessary length. Unquestionably the overwhelming weight of authority supports the rule that has heretofore obtained in Michigan. Abrogation of that rule by this Court is in excess of the powers vested in the judiciary of the State by the Constitution adopted by the people acting in their sovereign capacity. The practical situation presented is that if the legislature deems it necessary so to do it may act to modify, or even abrogate entirely, the doctrine of governmental immunity. It is also true that the people acting under the initiative provisions of the State Constitution may accomplish a like result by legislation or by Constitutional amendment."

On the opposite side the opinion by Mr. Justice Edwards said:

"All distinguished writers recommend corrective legislation, enacted with the adjusted detail carefully drawn statutes only can provide. So do I. But what is an appellate court to do when the legislative process remains comatose, year after year and decade after decade, the court meanwhile bearing the onus of what

was done judicially during the dim yesterdays and maintained to this day by the self-stultifying fetish of stare decisis? Must the court continue to proclaim its impotence as legislators shrug their responsibility with a nod of *risus sardonicus* toward the error-guilty judicial branch? My answer is that this Court may relieve itself of past error by confessing and adjudging that error, and that it may at the same time force what all students of the problem have rightly sought for lo these many years; *a statute* relieving the injured citizen from the total burden of municipal negligence and still controlling the result so that municipal functions may be carried on without serious financial risk." (Emphasis supplied.)

In the concurring opinion in Holytz v. City of Milwaukee, 17 Wis.2d 26, 115 N.W.2d 618, 627, which approved both the abrogation of the sovereign immunity doctrine and that such abrogation should, in the absence of legislative action, be accomplished by the court, it was stated: "The legislature still has the last word and may restore the court abolished rule if it determines public policy so requires." This kind of reasoning does not appear to be logical and merely indicates all the more strongly that such determination of policy should be made by the legislature in the first instance.

In Spanel v. Mounds View School District, 118 N.W.2d 795, 804 (Minn. 1962), the trial court dismissed an action on the ground of governmental immunity. The appellate court decided that the doctrine should be abrogated, but that this should operate in futuro and felt compelled to affirm the judgment of dismissal. In its closing paragraph it said:

"It may appear unfair to deprive the present claimant of his day in court. However, we are of the opinion it would work an even greater injustice to deny defendant and other units of government a defense on which they have had a right to rely. We believe that it is more equitable if they are permitted to plan in advance by securing liability insurance or by creating funds necessary for self-insurance. In addition, provision must be made for routinely and promptly investigating personal

injury and other tort claims at the time of their occurrence in order that defendants may marshal and preserve whatever evidence is available for the proper conduct of their defense." We see, then, that the action of the trial court dismissing the claim against the school district was affirmed, and the rule abrogating sovereign immunity made to apply only in futuro. This is the treatment recommended in many of the cases, in all of which cases, then, virtually the entire opinion becomes dictum. But this is simply legislating on matter not before the court. The power of this court on appeal is governed by NRS 2.110 reading: "Power of court on appeal. This court may reverse, affirm or modify the judgment or order appealed from as to any or all of the parties, and may, if necessary, order a new trial * * *." Following the dissenting opinion in State v. Corinblit, 72 Nev. 202, 298 P.2d 470, in which the majority of this court authorized neither a reversal nor an affirmance nor a remand but simply a "declaration of error," the legislature amended NRS 177.060, by the addition of NRS 177.065, so as specifically to permit the state to appeal questions of law in criminal cases where such questions had become moot. So far as can be found, this is the only instance in which this court has been authorized to determine moot questions, in other words, advisory opinions. In some states, but not in Nevada, such course is specifically authorized.

Mr. Justice Schauer, with whom Mr. Justice McComb concurred, dissenting in Muskopf v. Corning Hospital District, 55 Cal.2d 211, 359 P.2d 457, 463, convincingly spoke as follows:

"As recently as 1958 this court, in Vater v. County of Glenn, 49 Cal.2d 815, 820 [4], 323 P.2d 85 (per Chief Justice Gibson, with only Justice Carter dissenting), although it expressly recognized that there has been much learned criticism of the principle of governmental immunity, held that 'abrogation or restriction of this doctrine is primarily a legislative matter.' And Talley v. Northern San Diego Hosp. Dist. (1953), 41 Cal.2d 33, 41 [15], 257 P.2d 22 (per Justice Shenk, with only

Justice Carter dissenting), upon facts materially identical with those of the present case, held that 'Whether the doctrine of sovereign immunity should be modified in this state is a legislative question.' Also this court, in denying petitions for hearing after decisions of the District Courts of Appeal, has during the last decade frequently adhered to this view. [Citing many cases] But today's majority apparently impatient with the Legislature's failure to act as speedily and comprehensively as they believe it should, usurp the legislative function, refuse reasonable respect for the doctrine of *stare decisis*, and sweepingly announce (p. 90 of 11 Cal.Rptr., p. 458 of 359 P.2d) that 'After a re-evaluation of the rule of governmental immunity from tort liability we have concluded that it must be discarded as mistaken and unjust.' "

No satisfactory answer has been forthcoming to destroy this logical and convincing argument.

Mr. Justice Schauer's reference to the fact that the legislature enacted various statutes concerning immunity during the period while California was holding that the abolishment of governmental immunity was a legislative function finds an echo in our own situation. After the City of Reno had been made defendant in many tort actions growing out of defective sidewalks, the legislature of this state by an act approved March 28, 1957, Stats. Nev. 1957, ch. 287, § 5, amended the charter of the City of Reno by providing that the construction, maintenance and repair of sidewalks, curbs and gutters within the city was declared to be a governmental function and that "no action, suit or proceeding shall be instituted or maintained against the City of Reno, its officers and agents for injuries to persons or property resulting from any failure on the part of the City of Reno, its officers and agents to construct, maintain or repair any sidewalk, curb or gutter within the city."

The necessity for legislative action is further illustrated in an article entitled, "The work of the California Law Revision Commission on SOVEREIGN IMMUNITY," by Thomas Stanton, of San Francisco, 38 Calif.

S.B.J. 177. The author first refers to Muskopf v. Corning Hospital District, 55 Cal.2d 211, 11 Cal.Rptr. 89, 95, 359 P.2d 457, 463, in which it was determined in the majority opinion that the "doctrine of governmental immunity for torts for which its agents are liable has no place in our law." The author notes that the decision in Muskopf "was preceded by an extended study by the Conference of the problem of sovereign immunity from liability, which culminated in 1956 in the approval of a committee report, *recommending the adoption of a statute* making public agencies in California liable for all torts committed by their employees within the scope of their employment." (Emphasis supplied.) The action of the Conference then came before the governors, and the board referred it to the California Law Revision Commission. The California legislature in 1957 then authorized the Commission to make a study to determine whether the doctrine of sovereign or governmental immunity in California should be abolished or revised. The legislature then in 1961 enacted a statute suspending the effect of Muskopf until the 91st day after the adjournment of the 1963 session, contemplating that further legislative action would be taken prior to the deadline date, and it looked to the Commission for recommendations on the form of such legislation. The Commission devoted two years to the study, resulting in the submission to the legislature of a series of seven recommendations. These are too detailed for inclusion here, but clearly indicate the complex nature of the recommended legislation—a veritable code governing the ramifications of the proposed legislation, which in turn required amendment of other subsisting acts of the legislature—things that no court of last resort could possibly undertake. The factual matters above recited are taken entirely from Mr. Stanton's article.

The matter of abrogating the rule of sovereign immunity is a classic example of a policy that should be determined, if at all, by the legislature. Single car accidents on the vast stretches of Nevada roads are becoming more and more frequent. Small rocks on the roads may launch a hundred tort actions against the county.

The policing of such roads and the furnishing of investigators would be a major financial problem, to say nothing of the clogging of the courts with jury actions, as well as the great increase of burdens upon the appellate court. The legislature, with its investigative machinery, should attack the problem and declare the policy under such rules as may seem proper.

But perhaps the most cogent reason against abrogating government immunity by court decree is the fact that it operates in praesenti rather than in futuro as would an act of the legislature. In the future all governmental agencies will appreciate the necessity of insuring against liability. Persons who have in the past abstained from filing actions against a county because of our declared rule of governmental immunity will, if not barred by limitations, be clothed with the right to sue governmental agencies which, relying on our declared doctrine, have not found it necessary to take out liability insurance.

I would affirm the judgment of the trial court in dismissing the action.